J. E. GORRELL, D. Ross Murphy, Louise Rogers, Edwin A. Krueger, Henry Fritchell, Fred S. Butler, and Ross Swigart, Appellants (Plaintiffs below),

v.

The CITY OF CASPER, Wyoming, a municipal corporation, William R. Earnshaw, Mayor, Rudy Kohuth, Robert G. Wildman, M. M. Orton, Patrick H. Meenan, Tim Force, Cecil Shaw and Robert Hildebrand, members of the City Council of said City, and Henry Rolfes, City Manager of said City, Appellees (Defendants below).

The CITY OF CASPER, Wyoming, a municipal corporation, William R. Earnshaw, Mayor, Rudy Kohuth, Robert G. Wildman, M. M. Orton, Patrick H. Meenan, Tim Force, Cecil Shaw and Robert Hildebrand, members of the City Council of said City, and Henry Rolfes, City Manager of said City, Appellants (Defendants below),

v.

J. E. GORRELL, D. Ross Murphy, Louise Rogers, Edwin A. Krueger, Henry Fritchell, Fred S. Butler, and Ross Swigart, Appellees (Plaintiffs below).

Nos. 3063, 3064.

Supreme Court of Wyoming.

June 1, 1962.

Thomas A. Nicholas and Robert R. Rose, Jr., Casper, for appellants.

J. F. Mahoney (of Mahoney & Murphy), Casper, and Thomas B. Faxon (of Dawson, Nagel, Sherman & Howard), Denver, Colo., for appellees.

J. F. Mahoney (of Mahoney & Murphy), Casper, and Thomas B. Faxon (of Dawson, Nagel, Sherman & Howard), Denver, Colo., for appellants.

Thomas A. Nicholas and Robert R. Rose, Jr., Casper, for appellees.

Before PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This is an action by certain taxpayers on behalf of themselves and others similarly situated against the City of Casper, its mayor, councilmen, and manager, challenging the validity of a local improvement district purportedly created under the provisions of §§ 15–444 to 15–513, inclusive, W.S.1957, relating to local improvements in cities and towns. Although the petition alluded to various remedies, it appears that the principal relief sought was an injunction against further proceedings by defendants, and such was the interpretation of the trial court. The matters here questioned cannot well be divorced from prior occurrences.

In 1958, the City of Casper initiated action for the adoption of an extensive street improvement program and consulted engineers who filed a 200-page report setting forth their preliminary findings and analysis concerning the project. In April of 1959 the city employed an engineering firm which conducted an additional study and in a report reappraised the former engineers' findings and analyses and made its own recommendations. The 1959 program was submitted to the city landowners and in counsel's words "was smothered by protests," after which a member of the engineering firm previously employed by the city conducted a telephone survey of freeholders as to reasons for dissatisfaction. The engineering firm in October 1959 commenced work on grade designs and in mid-April 1960 presented maps to the city showing recommended flow line elevations at curbs. The defendants on March 18, 1960, opened an information center at the city's consulting engineer's office and disseminated certain publicity by radio, newspaper, and direct mail, including an information pamphlet apparently intended to describe the differences between the 1959 and 1960 programs. On April 11, 1960, the City Council adopted the Resolution of Intention for District No. 1960 (Project 60), which was published as a seven-page newspaper notice on April 19, with a copy being mailed to each property owner in the district. This resolution stated the boundaries of the district, which in effect constituted all except 225 acres of the City of Casper, and the character, kind, and extent of paving, drainage, and curb, gutter, and sidewalk improvements; described fourteen different drainage areas; and gave estimates as to footage and the square foot cost of the paving, concrete, and drainage improvements. The only references in the resolution and notice which could conceivably refer to grade or grading were:

"That the City of Casper proposes to construct paving; curb; curb and gutter; combined curb, gutter and sidewalk; and drainage improvements in and along the following streets, and parts of streets, with intersections, within said City between the termini specified, as such are shown on the official plats and maps of the subdivisions or additions in said City, now on file and of record, the character and location to be as shown in more detail in the preliminary and tentative exhibits on file in the office of the City Clerk and available for public inspection during normal office hours."

"The construction of concrete improvements shall include all necessary removal, replacement, excavation, fill-

ing, grading, storm sewer inlets, curb openings for driveways and alleys, valley gutters and appurtenant work and shall be constructed parallel to the street center line. * * * "

"Excavation and grading necessary to bring the subgrade to proper elevation for the proposed improvements shall, on an average, be approximately twelve inches in depth on 'AG' and 'AP' streets and approximately sixteen inches in depth on 'BG,' 'BP,' and 'C.' The improvements shall include the removal of obstacles, including the removal of existing street improvements which fail to meet the minimum standard for streets of the City of Casper as adopted by Ordinance No. 1298A, Series 1959, or which do not conform in location or character to the proposed improvements."

Under § 15–453, which provides that there shall be no further proceedings if there is a protest by the owners of over one-half of the area subject to assessment, there were here filed protests by the owners of 26.27 percent of the property in the enlarged district. On December 5, 1960, the ordinance creating Project 60 was finally passed and adopted. On December 12 it was published, and on December 20 the council approved plans, specifications, maps, and estimated cost of the improvement and directed the giving of notice to contractors. The injunction proceeding was commenced on December 29. The complaint contained numerous recitations of illegality and impropriety relating to the project, many of which were eliminated at pretrial conference. Following an extended trial, the court found against plaintiffs on all aspects of the case except one, i. e., there was a substantial irregularity in the notice of intention and ordinance as related to the grades of numerous proposed streets, sidewalks, curbs, and gutters;[1] and according-

ly, entered judgment enjoining the defendants from proceeding with Project 60. From this judgment defendants appealed (Case 3064) presenting the single issue of sufficiency of notice concerning grades. Simultaneously plaintiffs appealed (Case 3063) as to all issues on which the court found adverse to them but later waived a number of these by failure of reference in the brief.[2] The city's appeal presents the question, Did the resolution and notice, with such supplement as was provided by reference to maps, comply with the statute requiring specification with convenient certainty of the improvements contemplated insofar as grades were concerned?

The court's views on which the judgment was based are well reflected in certain portions of the findings of fact:

"The Resolution or Notice of Intention is not vague and indefinite in describing streets and places to be improved * * * except that it does fail to properly notify the property owners that it was proposed to establish and alter grades of numerous streets, sidewalks, curbs and gutters throughout the city at the cost and expense of the property to be assessed. * * * "

" * * * the facts are that in many instances the centerline elevation of streets will be raised or lowered, existing curbs, gutters and sidewalks will be removed and replaced and the result will be to change or alter the grade thereof * * * ."

and in the conclusions of law:

"The Notice of Intention did not specify with convenient certainty, as provided by Section 15–452, Wyoming Statutes, 1957, or contain a reasonable description of the improvements contemplated, as to the subject of grades, so it was impossible for the property

---

1. This aspect was not a part of the original complaint but was introduced with leave of court as an amendment by interlienation on March 28, 1961.

2. Riordan v. Horton, 16 Wyo. 363, 94 P. 448; Chicago, B. & Q. R. Co. v. Lampman, 18 Wyo. 106, 104 P. 533, 25 L.R.A., N.S., 217, Ann.Cas.1912C, 788.

owners to estimate as to how much grading, if any, was to be done. * * "

"There is no provision in our statute making the establishment of a grade a condition precedent to the right of the city to improve the street, or prohibiting such improvement before the grade is established, and the failure to do so is not a fatal jurisdictional defect. But when the city does have grade designs and maps prepared, and intends to use them in the proposed construction, and has used them for other purposes, and no proper notice is given therefore [sic] in the Notice of Intention, the proceedings should be held invalid even though the city has not formally adopted said grades by ordinance or resolution. The ultimate result in this case would be to establish and alter grades by the proposed construction work."

■ The first step in evaluating the court's findings and conclusions on this point is a scrutiny of the evidence. It will be recalled that the resolution of intention published in the newspaper stated that maps and plats showing the character and location of the proposed improvements would be on file in the office of the city clerk. However, witnesses testified that the three documents which taken together constituted a "grade map" were not in the office of the city clerk but at the information center and office of the city engineer where they were examined by certain callers with the assistance of the engineers. The nature of the "grade map" and the information which it disclosed is well explained by the testimony of one of the engineers responsible for its preparation:

"The engineering grade map that we as engineers provided to the city shows final elevations that we recommend * * * of the streets. They do not show on that map, or is it a practice to show the existing elevations of the roadways. Where we tie or recommend that existing curbs be used in place, we show on that map the eleva-

tions of the existing curb, other than the existing curb elevations there is no correlation, so to speak, on the map itself between the existing elevation and the final recommended elevation. * * the information that we had available which was our design information would show us the differences in elevation * * * but it is not shown in the final grade map."

This witness also indicated that there were many proposed grade changes, some drastic, one being an anticipated fill of approximately five feet.

The trial court in its findings concerning the grades undoubtedly had in mind the provisions of §§ 15–451 and 15–452 that whenever a city shall make local improvements or establish or alter the grade of any street the published resolution of intention should specify the character, kind, and extent of the improvement. Even if we disregard the failure of the city to place the maps in the clerk's office in accordance with the published notice there was no real compliance as far as grades were concerned with these statutes. The published resolution did not in itself provide any specific information. Such maps as were placed in the offices of the engineers contained information as to the proposed improvements, but these were comparatively meaningless except as they might be correlated with the existing elevations which with minor exceptions were not shown. Moreover Casper's city manager testified that the delivery of the maps to the city did not occur until after the beginning of the protest period.

■ Defendants contend that plaintiffs failed to remonstrate to the city council on the question of grades and thereby waived the right to object, insisting that such failure renders the present attack collateral and subject to dismissal. They refer to Bass v. City of Casper, 28 Wyo. 387, 205 P. 1008, 208 P. 439, and the discussions therein concerning the failure of property owners to object under the provisions of the present § 15–466, arguing that the same principle is equally applicable to objections

to preliminary action at the hearing on the Resolution of Intention. They disregard the fact that the statute which was discussed by Judge Blume in the Bass case contained a provision relating to the assessment roll, "objections not made within the time and in the manner herein prescribed shall be conclusively presumed to have been waived." There is no such provision in § 15–452. Moreover, nothing in the publication or supplementary maps here under consideration related directly and concretely to change in grade, and it would be wholly unwarranted to provide that there be a waiver as to a matter which was never before the property owners as required by statute. Consequently, § 15–448, "The action and decision of the council as to all matters passed upon by it in relation to any action, matter or thing provided in this act shall be final and conclusive in the absence of fraud," upon which reliance is here placed, has no application. In urging that there was a waiver here, defendants cite the cases of Blake v. City of Eureka, 201 Cal. 643, 258 P. 945, and Meahl v. City of Henderson, Ky., 290 S.W.2d 593, but it is unnecessary to discuss them as they do not deal with a situation where the property owner was unaware of a defect at the time of the hearing. As this court said in Howrey v. Star Ins. Co. of America, 46 Wyo. 409, 28 P.2d 477, 479, "a party cannot be held to have waived a right based upon material facts, the existence of which he did not know."

Defendants also argue that there was no proof that any proposed change in grade would adversely affect the property of plaintiffs. It is unnecessary to discuss either the evidence regarding change of grade or the damage which would have resulted from an increase in assessment since the cases cited by defendants to support their point do not relate to taxation or assessments.

It follows from what we have said that the judgment of the trial court must be affirmed, and this disposition of Case 3064 is determinative of the cause so that ordinarily we would not discuss the matter further. However, defendants have specifically requested the views of the court regarding local improvements in order that the authorities of the City of Casper and other Wyoming municipalities be informed.

The real issue presented by plaintiffs' appeal is their contention which defendants paraphrase as "The combination in one district of improvements and area violated the statutes because such combination cannot be reconciled with the obvious intention of the protest provision of Section 15–453 * * * [W.S.1957]." Plaintiffs argue that before the enlarged district statute (§ 15–506) can be applicable a local improvement district (as described in § 15–465) must be formed. This merits careful analysis. Defendants do not respond directly. Instead they contend that the council made a specific determination as to the special benefits to be conferred by the improvements under the "substitute method portion of § 15–465" (which plaintiffs call the "catch-all" paragraph); assert that the matter is not subject to attack because of § 15–448; note that the judgment held that all acts of the mayor and council were in good faith and that there was a failure to prove fraud or abuse of discretion; and argue that the trial court's judgment held the city to have proceeded properly under § 15–465, as amended, and § 15–506.

Section 15–465 as it appeared in the original Act[3] specified the property to be included within the limits of a local improvement district and the method of apportioning the assessment. The section has been twice amended: § 3, c. 142, S.L. of Wyoming 1937, provided an additional method of apportionment; § 2, c. 112, S.L. of Wyoming 1957, provided a further method and also gave the city power to adopt a substitute method of assessment, the controversial "catch-all" paragraph:

"In cases where the method of assessment outlined in this act would re-

3 Section 18, c. 120, S.L. of Wyoming 1915.

sult in an inequitable distribution of costs among the property owners or any of them whose property is benefited by the improvement, the governing body is hereby empowered to adopt a substitute method of assessment which will result in a distribution of cost among the property owners in proportion to the benefits conferred by the improvement."

Section 15–506 has remained unchanged since the time of its passage:

"Whenever any local improvement shall be of such nature and character that the special benefits resulting therefrom extend beyond the boundaries of the local improvement district hereinbefore described and defined, the council may create an enlarged district which shall include as near as may be all the property specially benefited by such improvement. In such case the petition or resolution initiating such improvement shall state that it is proposed to create an enlarged district to pay the whole or a portion of the cost and expense of such improvement and shall specify and describe the boundaries of such enlarged district to pay the whole or a portion of the cost and expense of such improvement and shall specify and describe the boundaries of such enlarged district and shall specify a fixed amount of the cost and expense of such improvement to be assessed against that portion of the property within such enlarged district, lying between the termini of the proposed improvement and extending back from the marginal lines thereof to the middle of the block on each side thereof, in the mode prescribed in the preceding section hereof, and that such portion of the remainder of such cost and

expense as may not be borne by any general fund, shall be distributed and assessed against all the property included in the remainder of such enlarged district in accordance with such special benefits."

 Considering the dictionary definition of "enlarged" and the use of the word here, we cannot conceive of any independent existence of this section of the statutes. The word "enlarge" in its dictionary meaning connotes the existence of something lesser in extent. In other words, there can be no article which is enlarged unless there is an original article to which reference is made. This being so, the enlarged district permitted by § 15–506 is dependent upon the previous or concurrent establishment of a local improvement district as described in § 15–465. Such an interpretation while growing out of rules of grammar and semantics is also grounded in equity and justice. Undoubtedly, the legislature contemplated that a protest by the owners of over one-half of the property situated in either the local improvement district or the enlarged district (which includes the smaller) would be sufficient to prevent further proceedings. It would be manifestly unfair that the property owners in a local improvement district, here designated as a "primary area," [4] be deprived of any effective protest except as their district comprised a part of the enlargement.

 Other points coming to our attention should perhaps be mentioned in the light of the defendants' request for information concerning local improvement proceedings. While we do not agree with the plaintiffs' contention that c. 67, S.L. of Wyoming 1961, granting to a city the power to designate and establish arterial streets and to borrow money and issue coupon

---

4. The term "primary area" is not found in any statute concerning local improvement districts but was defined in the city's resolution of intention as "that portion of the property within such enlarged District, lying between the termini of

the proposed improvements and extending back from the nearer marginal line thereof to the middle of the block on each side thereof, or to a line parallel to and ninety feet from said marginal line, whichever is greater. * * *"

bonds therefor, prevents the inclusion of arterial streets as a local improvement under c. 8, title 15 W.S.1957, municipal authorities should exercise the utmost care to be certain that the property to be assessed is that to which the benefits primarily accrue. From the record and briefs we observe that there was considerable difficulty in understanding the proceedings which the city promulgated in this matter, and some occurrences should not pass without comment. Both the ordinance and resolution of intention provided that a certain percentage of the assessable cost of the paving of the arterial streets should be borne by the property within the "primary area," and the remainder of the assessable cost and expense assessed against all of the property included in the *remainder* of the enlarged district, a fact which is now denied by the defendants. There is a discrepancy in the allocation of cost and expense of side streets between the resolution of intention and the ordinance, the former providing that 50 percent of the assessable cost and expense of the paving improvements should be borne by the property within the primary area and the remainder of the assessable cost and expense assessed against all the property included in the *remainder* of the enlarged district, while the ordinance provided that the remainder of the assessable costs be assessed against "all the property included in such enlarged district." A point of some significance was the reference in the resolution and ordinance to areas by lifting verbatim from the statutes the words "lying between the termini of the proposed improvement * * *." This was meaningless without maps, plats, or descriptions, and did not specify with convenient certainty within the requirement of the statute.

Plaintiffs seriously urge that the "catch-all" paragraph in § 15–465 is unconstitutional, but no determination on this point is essential. In accordance with our well established rule, we pass upon the constitutionality of a statute only when a case cannot be completely and effectively disposed of without such a decision.

Affirmed.

BLUME, C. J., not participating.