William L. MARION, Oscar Deal, Robert D. Robinson, Edward A. Farlow, Clyde H. Decker, James M. Wade, and Wainright Gustin, Appellants (Plaintiffs below),

v.

CITY OF LANDER, Wyoming, a Municipal Corporation, and Mel T. Hallam, Mayor, and Harold E. Farthing, H. A. Carson, Charles H. Souter, and Woodrow Von Bieker, members of the City Council of said City of Lander, Wyoming, Appellees, (Defendants below).

No. 3254.

Supreme Court of Wyoming.

Aug. 21, 1964.

John J. Spriggs, Sr., Lander, and John J. Spriggs, Jr., Washington, D. C., for appellants.

Smith & Harnsberger, W. A. Smith, Lander, for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

This case involves an appeal from a summary judgment entered by the trial court on behalf of appellees, defendants below, in an action commenced by appellants, plaintiffs below, as taxpayers and owners of real property in the City of Lander, Wyoming, for themselves and others similarly situated, to enjoin further proceedings undertaken by the defendants to establish a local improvement district for the purpose of constructing and installing certain improvements therein; and to assess the costs thereof as special benefits to the property owners within the district.

Briefly, the record before us discloses that in the early part of the year 1963 officials of the City of Lander became interested in an extensive program of street paving within the city, including curb and gutter, drainage, and other incidental improvements in connection therewith. A procedure to accomplish such an undertaking is contained in §§ 15–444 to 15–512, inclusive, W.S.1957, as the same have been amended by Ch. 145, S.L. of Wyoming, 1963. Without here going into the detail of the statutory grant of power to cities and towns in the premises herein, it can be said generally that four essential steps must be taken by the city council in order to perfect the procedure: (1) the adoption of a resolution of intention to make the improvements containing certain prescribed information and fixing the time and place for hearing protests; (2) the enactment of an ordinance reciting the action taken on the resolution of intention, and if the council determines to proceed, ordering the improvements to be made; (3) the letting of a contract for construction and installation of such improvements; and (4) the levy and equalization of special assessments against property owners within the district to defray specified costs of the improvements.

Pursuant to such authority, the city council on July 27, 1963, adopted a resolution declaring its intention to proceed with the program and for that purpose to create an improvement district the boundaries of which were to be coterminous with the corporate limits of the city. However, because of the divergent nature of the improvements, it was proposed that the same be separated into four categories, i. e., residential street paving, arterial street paving, curb and gutter, and drainage and incidental improvements. The total estimated cost was in the sum of $2,322,171.00. The resolution specifically names the streets proposed to be paved and describes generally the nature and extent of the construction work to be done. The same general information is furnished with respect to the other pro-

posed improvements. The resolution also recites that the council has determined that such proposed improvements will confer special benefits upon owners of property within the district and sets forth the method proposed for assessing such benefits. With respect to residential street paving, it is proposed to assess the costs on each one-half block contiguous to the improved street on a square-footage basis. With respect to arterial street paving, the portion of the cost equal to the cost of residential street paving will be assessed on the basis above described and the excess, if any, is proposed to be assessed against all of the assessable property within the district—also on a square-footage basis. Assessments for curb and gutter improvements are proposed to be made on a lineal-foot basis. With respect to proposed assessments for the drainage and incidental improvements, the council determined that only a limited area within the district would be specially benefited by such improvements, and after fixing the boundaries of the area by a course and distance description it proposed to levy an assessment against all the property therein on a square-footage basis.

The resolution also fixed a time and place for the purpose of considering protests and objections to the proposed improvements and also provided for serving notice of the proceeding in the manner prescribed by statute.

The provisions relating to the filing of protests by owners of real property subject to assessment is of importance in the proceeding. Under our statute, § 15–453, W.S. 1957, as amended by Ch. 145, § 5, S.L. of Wyoming, 1963, if owners of more than fifty percent of such property complain in writing, the project as proposed must be abandoned. That was not done here. According to the record the protests made embraced only approximately one-fourth of the area proposed to be improved by street paving and curb and gutter and approximately one-third of the area proposed for drainage and other improvements. Thereupon the city council met in special session

on September 16, 1963, and enacted an ordinance which overruled the protests; in essence carried into effect the proposals contained in the resolution of intention; and directed the engineer to prepare plans and specifications for the several projects.

Soon thereafter and before any further steps were taken by the city to complete the matter, the plaintiffs filed their complaint launching a frontal attack upon the validity of the proceedings already taken and proposed to be taken by the defendants. The general basis of their complaint was that enumerable constitutional provisions were being violated by the defendants; that the defendants were proceeding without authority of law and in a fraudulent, arbitrary and capricious manner; and that defendants were without jurisdiction in the premises. The relief sought was a determination that the resolution of intention and the ordinance were void and of no force or effect; that defendant be enjoined from proceeding further in the matter; and for an accounting of alleged illegal expenditures.

■ The amended answer of defendants, in substance, denied the allegations of the complaint pertaining to the several charges advanced by plaintiffs and prayed that the complaint be dismissed. Following this, the defendants filed a motion for summary judgment pursuant to Rule 56, Wyoming Rules of Civil Procedure. Attached to the motion was a certified copy of the transcript of all of the proceedings taken by the city with respect to the resolution and the ordinance, together with supporting affidavits bearing upon the regularity of such proceedings. At this juncture a critical point was reached in plaintiffs' action. Unless controverted, the factual matters so presented by defendants were sufficient—as later determined by the trial court and with which we agree—to show substantial compliance with applicable statutory requirements for the creation and establishment of the special improvement district. Consequently, if plaintiffs were to succeed in their claims, other than their direct attack upon

such statutes, they could no longer rest upon the mere allegations of their complaint. Vipont Mining Co. v. Uranium Research and Development Co., Wyo., 376 P.2d 868, 869. It was necessary for them to come forward in the prescribed manner and "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), W.R.C.P.

That plaintiffs failed to meet this burden is quite apparent. The only response made was the filing of five affidavits made by property owners in the district, stating in substance as a conclusion that they would be unable to pay the special assessments proposed because of their depressed financial situation; an unsworn statement of the county assessor setting forth the assessed valuation of certain lots and improvements within the district for the year 1963; and a few unidentified pictures of the modest and the palatial in the way of improvements upon certain properties represented as being within the proposed district by counsel for plaintiffs. Such matters are wholly without evidentiary value in presenting facts that aid plaintiffs in this litigation. Even assuming that the assessed valuation of certain of the properties for ad valorem tax purposes was properly before the court, there is no requirement so far as we can find that compels the city to take such matters into consideration in fixing and determining the assessment of special benefits. With respect to the other facets of the response, we could not if we tried improve upon the answer made by Judge Blume to similar contentions in Bass v. City of Casper, 28 Wyo. 387, 205 P. 1008, rehearing denied 208 P. 439, 446, wherein in the opinion on petition for rehearing it was stated:

"We are not unmindful of the fact that proceedings for local assessments are of vital importance to the taxpayers affected. We realize that inequality of burden is easily possible, and that even in the absence thereof, a great hardship is often imposed on property holders who can illy afford to contribute toward the making of an improvement which, to others, may appear a necessity. That may be, though it does not appear in the record, the situation of some of the parties assessed in the proceedings herein, and the learned counsel for plaintiff not only zealous in their duty as such, but, affected perhaps also by such condition of hardship known to them, have been insistent in urging upon us the correctness of their points of view. We understand and fully appreciate the situation often arising as above mentioned. We, moved by sympathetic feelings no less than counsel, would only be too glad to meet and remedy such conditions whenever arising, if we legally could do so. But the court has to perform the function assigned to it by the Constitution and laws of this state; and in this case the remedy, if necessary, which is sought by the learned counsel, must be sought at the hands of the legislative branch of the government, whose prerogatives, exercised in accordance with the Constitution, we have no right to usurp."

For such reasons and the further reason that the proceedings of the town council herein are clothed with a presumption of regularity; we agree with the special finding of the trial court that no genuine issue of any material fact concerning the sufficiency or regularity of the proceedings remained in the case. Whatever issues remained were questions of law. Consequently the only matter before us is whether or not the trial court correctly decided those issues. Lieuallen v. Northern Utilities Co., Wyo., 368 P.2d 949, 953; Fugate v. Mayor and City Council of Town of Buffalo, Wyo., 348 P.2d 76, 81.

Simply because a case reaches here on that state of the record does not mean, of course, that serious and difficult questions are not presented for solution. They are and such is usually the case. We expect it. But it ought not to be difficult in the first instance to ascertain just what questions are properly before us and merit consideration.

It is counsel's job to point them up, and if it is not done with preciseness and supported by cogent argument and pertinent available authority there it little we can do to aid counsel in their effort to rectify claimed error on the part of the trial court. Stolldorf v. Stolldorf, Wyo., 384 P.2d 969, 973; Miller v. Board of County Commissioners of Natrona County, 79 Wyo. 502, 337 P.2d 262, 271. It is on this score that we run into difficulty with the presentation made here by plaintiffs' counsel.

 To illustrate, let us first take up his insistence that the resolution of intention and the ordinance are "invalid, unconstitutional and void" because the statutes upon which defendants rely to sustain the proceedings are "unconstitutional and void." In support of the point counsel specifies en masse some fourteen constitutional provisions that are claimed to have been violated. Some obviously are wholly unrelated to such question. Others are scarcely mentioned, if at all, in his argument. Those that are argued with vehemence and passion, in the main, run counter to and ignore previous holdings and pronouncements of this court. The plain fact is that on at least three occasions we have as a general proposition sustained the right of the cities and towns, in keeping with these statutes, to create local improvement districts and to assess against the real property therein as special benefits the cost of such improvements. McGarvey v. Swan, City Treasurer, 17 Wyo. 120, 96 P. 697; Bass v. City of Casper, supra; Chicago & North Western Ry. Co. v. City of Riverton, Fremont County, 70 Wyo. 84, 246 P.2d 789, 792, 247 P.2d 660. Of interest in the last case mentioned is this statement:

"* * * However, the judicial decisions on legislation authorizing such special assessments have generally become so crystallized that it would seem to be rather late in the day to question their authority. * * *"

Furthermore, a ready answer will be found in those cases to most of the specific matters raised by counsel. In addition to the direct attack upon the statutes, plaintiffs' counsel also invokes other constitutional provisions claimed to have been violated by the city council in its proceedings. It is axiomatic, of course, that we do not inquire into constitutional questions unless necessary for disposition of the case. Sheridan County Power Dist. v. Chicago, B. & Q. R. Co., 61 Wyo. 365, 157 P.2d 997, 1000. Consequently, on this phase of counsel's presentation, a prime requisite was to furnish for the record a state of facts lending support to the argument. As we have seen, that burden has not been met. Issues of fact were not tendered on most of these contentions despite counsel's assumptions to the contrary.

From the foregoing general observations we have probably made clear that we find no merit in this appeal, and for such reason we shall not undertake to separate, organize and discuss all of the multifarious matters thrust upon us in plaintiffs' behalf. Nonetheless, because of their counsel's persistence in advancing his views regardless of our previous holdings and regardless of the state of the record, it might not be amiss to take up a few of his contentions simply to point out why plaintiffs cannot prevail.

 For example, in counsel's brief it is argued that the statutes fail to fix proper standards as to the nature and extent of the improvements to be made, thus violating the due process clause and equal protection clause of the constitution. Of course, the statutes do furnish general standards, but counsel's complaint is the lack of detail. In the Bass case we said that, in this state, cities and towns have been granted plenary power as to local improvements. We found no constitutional inhibitions against such a delegation of power. Concerning such grant we also said, at 205 P. 1016, that the determination "of the extent of the improvement and what shall be included in it" is the exercise of a legislative power and rests in the legislative discretion of the city council. That being true, it follows that no impropriety results in leaving details to the city council and unless it exceeds such power

or exercises its discretion in a fraudulent, arbitrary or capricious manner—which as we have seen is not shown here—the courts will not interfere. See also McGarvey v. Swan, City Treasurer, 17 Wyo. 120, 96 P. 697, 714–715; 13 McQuillin, Municipal Corporations, § 37.25 (3 Ed.); 63 C.J.S. Municipal Corporations § 1135.

Counsel says further that the statutes are deficient in that they fail to provide for a hearing on the question of whether the proposed improvements result in "special benefits" to the property proposed to be assessed and to furnish standards from which such a determination can be made.

Such argument is specious indeed in view of our holding in the Chicago & North Western Ry. Co. case. We there pointed out that the legislature itself by § 15–465, W.S.1957—which has since been amended by Ch. 145, § 12, S.L. of Wyoming, 1963, augmenting the provisions of § 15–465—determined specifically the real property specially benefited by the improvements, and in that connection we said, at 246 P.2d 800:

"* * * For a case such as that before us, the rule applies that when the legislature, (or its duly delegated agent for that purpose as stated supra), determines what property is benefited and shall be assessed, such determination is well nigh conclusive. That is a rule of almost universal application, as announced in numerous authorities, aside from those already mentioned."

With respect to the validity of the statute in making such a determination we further said, at 246 P.2d 801–802:

"* * * We cannot say, under the authorities heretofore cited, that our statute is so arbitrary or palpably unjust as to require the judicial department to declare the act of the legislature void. Appellant's offered testimony that the property was not benefited is of no avail against the determination of the legislature to the contrary. It could be heard only on the question of

proper apportionment according to the rule provided by our statute. * * *"

In this connection perhaps we should mention that the argument of counsel is directed principally at the proposal to include "arterial street paving" as improvements within the district. It is contended that such improvements are "general" rather than "local." Again we have held that this is not true as a matter of law. Gorrell v. City of Casper, Wyo., 371 P.2d 835, 840–841. The question as to whether or not the city council's determination that the improvements were local was made fraudulently or arbitrarily is not before us. There are no facts from which such an inference could be drawn.

Before leaving this matter of notice and hearing we should not be understood as departing from what we said in the Bass case. It was there held that due process required notice and hearing at some stage of the proceeding in order that owners might question the validity and justness of the assessments for special benefits. However, we also held that the statutory provisions for notice and hearing upon the assessment roll were sufficient to meet such a requirement, even though the assessment roll is not made up until after the contract for installation and construction of the improvements has been let. We know of no subsequent development in the law, and counsel cites us to none, which convinces that such holding when made was unsound or is unsound today.

Turning now from the direct attack upon the statutes to attacks upon the proceedings of the city council, it is contended by plaintiffs that the proposed assessments violate Art. 1, § 28 of the Constitution requiring that "All taxation shall be equal and uniform." The principal basis of the complaint seems to be that the method proposed by the city to apportion the cost of the improvements fails to give consideration to the assessed valuation of the property upon which the resulting assessments will be levied. As stated above, considera-

tion of that factor is not a statutory requirement. As to the constitutional provision, the complete answer is stated in the McGarvey case, at 96 P. 707, where we said "such provisions have reference only to general taxation, and do not restrict the power of levying special assessments." However, because of counsel's unfounded attack upon the members of the city council in this respect we go a little further. Section 15–465, W.S.1957, as amended by Ch. 145, § 12(b), S.L. of Wyoming, 1963, provides alternative methods of allocation. Whatever method, or combination of methods, is utilized results prima facie in an equal and uniform allocation. Without a clear showing that the statute is arbitrary or results in grave injustice in this respect, we cannot say it is void. No such showing has been made. Consequently we find it difficult to understand counsel's attack upon members of the council. The record shows substantial compliance with the statute by the council. If the statute is not void, the action of the council cannot be void.

 There is yet another answer that prevents plaintiffs from prevailing upon this point. The substance of the contention goes to the amount of their own assessments. The assessments, by the way, have not yet been made. When made, and before confirmation by the city council, a hearing must be held by the council sitting as a board of equalization for the purpose of considering protests to the proposed assessments. By statute, § 15–466, W.S.1957, as amended by Ch. 145, § 13, S.L. of Wyoming, 1963, such board is empowered to "correct, revise, raise, lower, change or modify such roll or any part thereof, or set aside such roll and order that such assessments be made de novo, as to such body shall appear just and equitable, and then proceed to confirm the same by ordinance." If a protestant is aggrieved by the decision of the board, provision is made for appeal to the courts. We held in the Bass case that those provisions were adequate for the purpose of determining and equalizing assessments against the property in the district and that,

absent fraud, such assessments were not subject to collateral attack. There is all the more reason for applying the same rule to preliminary stages of the assessments where it is shown as it is here that the city council had jurisdiction in the premises and was lawfully proceeding.

It is further contended by plaintiffs' counsel that the entire proceedings are void for the reason that the individual defendants were unlawfully occupying the offices of mayor and city councilmen at the time the resolution of intention was adopted and the ordinance enacted. The argument is twofold.

 It is first advanced that the reclassification of the Town of Lander on March 7, 1963, to a city of the first class brought about its dissolution and from that date on the duly elected officials of the town occupied their offices as usurpers. There is no merit in this. It is true, of course, that the reclassification brought about certain changes in the city's form of government and its powers. Nevertheless it continued to exist as the same public corporate entity. 62 C.J.S. Municipal Corporations § 36b. Furthermore, § 15–36, W.S.1957, relating to the matter of reclassification provides: "The government of such city shall continue in authority until the reorganization, which shall be effected by the holding of a regular election under the provisions of this act." Even it if were true, as counsel insists, that the reclassification brought about vacancies in these offices, that statute fills the vacancies by appointment until the reorganization is completed.

The other facet of the argument is that the terms of the mayor and two members of the town council ended on May 9, 1963, and from that date on they occupied such offices illegally. In this connection it is argued in substance that § 15–165, W.S.1957, providing that elected officials of a town shall hold office "until their successors are elected and qualified" is in contravention of Art. 3, § 32 of the Constitution providing in part that "no law shall extend the term of any public officer." For purposes of the

argument we accept counsel's premise that no election was held on May 9, 1963, to fill the offices of mayor and two councilmen and that the occupants continued to act as such officers during all of the proceedings herein. However, we do not agree with counsel's conclusion. We find no occasion to consider the constitutional question.

In May v. City of Laramie, 58 Wyo. 240, 131 P.2d 300, 314, we made reference to the rule that even though an officer might be appointed under an unconstitutional statute, he was nevertheless a de facto officer and acts performed by him prior to a judicial decision holding the statute unconstitutional were valid so far as they involved the interests of the public and third persons. So, even assuming as argued that such statute is unconstitutional, it does not follow as a matter of law that the proceedings taken by the mayor and the members of the council prior to this action were void. See also Stevens v. Shull, 179 Ark. 766, 19 S.W.2d 1018, 1020, 64 A.L.R. 1258; Freeman v. City of Neligh, 155 Neb. 651, 53 N.W.2d 67, 71; City of Albuquerque v. Water Supply Co., 24 N.M. 368, 174 P. 217, 225, 5 A.L.R. 519. But there is a further reason for rejecting counsel's argument. We just recently held in the case of Crawford v. City of Sheridan, Wyo., 392 P.2d 519, 520, that injunction was not a proper remedy to question the right of a person holding or exercising a public office within the state.

Several other contentions have been made by plaintiffs, but we think it unnecessary further to extend this opinion. Suffice it to say that we have reviewed and considered those contentions and find them to be without merit also.

Judgment affirmed.

Mr. Justice McINTYRE (dissenting).

In my view of this case, there are two reasons why the court should not give approval or sanction to the actions of the city council in its attempt to include the entire City of Lander in one local-improvement district for multiple improvements. First, such actions are as a matter of law unreasonable, arbitrary and capricious. And second, the city in this particular instance has improperly attempted to create two improvement districts in one proceeding.

*Reasonableness*

The act under which the city council has proceeded, Ch. 145, S.L. of Wyoming, 1963, describes the term "improvement" as any *local improvement* of any kind. See Ch. 145, § 1 E, S.L. of Wyoming, 1963. It is impossible for me to think of an improvement in one corner of the city as being *local* with respect to the extreme opposite corner.

Four kinds of improvements are specified in the council's declaration of intention. They are: (1) Residential street paving; (2) arterial street paving; (3) curb and gutter improvements; and (4) drainage and incidental improvements. Fifty-eight different portions of streets are described for improvements, with a change in existing street elevations or grades at some locations.

In § 12(b)(v) of the 1963 act, the legislature has undertaken to authorize more than one improvement to be combined in a *single-improvement district* when the council determines that such a combination is efficient and economical. It goes without saying that such a determination must be reasonable and not arbitrary or capricious. If the statute were otherwise interpreted, it would violate the constitutional requirements of due process of law. Kalman v. Western Union Telegraph Company, Wyo., 390 P.2d 724, 726–727. See also State v. Cater's Motor Freight System, 27 Wash.2d 661, 179 P.2d 496, 499.

Sections 15–530 to 15–541, W.S.1957, provide for the making of local improvements and other types of city improvements in general, to be financed by the issuance of bonds voted on by the people of the city. Section 15–531, W.S.1957, specifically provides that no bonds except local-improvement bonds, as provided by law, shall be

issued for improvements until the proposition to issue the same has been submitted to such a vote.

The obvious legislative intent is to exempt from the necessity of a vote of the people only those bonds which are issued for improvements which can be classed as strictly local. If the improvement is local and the city proceeds under Ch. 145, property owners can defeat the project only if protests are filed by legal owners of record of over one-half of the area of the property subject to assessment. See Ch. 145, § 5, S.L. of Wyoming, 1963.

This is where the test of reasonableness becomes apparent. If the city is fair and reasonable, and if it acts without being arbitrary or capricious, it will follow the spirit of the local-improvement statutes and give each property owner a genuine and bona fide chance to protest whatever improvement he is being assessed for.

When the improvement or combination of improvements is strictly local to a particular property owner, he has a chance to call upon his neighbors and prevail upon them either to support or to protest the city's proposal. However, when the improvement or improvements for which he is assessed is combined with numerous and divergent other improvements, all of which cost $2,322,171.00, in more than fifty-eight locations and extending over an entire city of 4,182 inhabitants, then his chances of prevailing upon sufficient property owners to approve or reject the combined proposal is effectively taken from him.

There could be no possible reason for the city council to include all city improvements considered to be desirable in a combination of one package, taking in the entire city, unless the council hopes to avoid bond issues voted on by the people and at the same time hopes to adopt an assessment system under which it is impossible, or practically so, for dissident property owners to defeat the proposal by the filing of affirmative protests.

To me, the council's action was a subterfuge and therefore unreasonable, arbitrary and capricious as a matter of law. That the city council has so acted is apparent from defendants' own affidavits and from the record before us, and summary judgment should not have been granted against the complaint of the plaintiffs.

### District Within A District

A particular illustration of the manner in which the city has effectively avoided possible protests is shown in the manner in which it attempts to establish two improvement districts (one within the other) under the guise and pretense of one so-called local-improvement district.

The city council purports to establish Local Assessment District No. 1 and to describe its boundaries by metes and bounds, including therein all of the City of Lander. In its ordinance the city recognizes and states that the various improvements are separate and distinct with substantial differences in character, location, method of assessment and otherwise.

Section 7 of the ordinance pertains to boundaries of the drainage and incidental improvement *area*. It declares: "There is hereby created within the boundaries of said City of Lander, Wyoming, Local Assessment District No. 1, an area for the purpose of determining the property to be uniformly assessed for drainage and incidental expenses." The boundaries of this area are described by metes and bounds, and it is expressly stated that such area lies entirely within the City of Lander and the District.

Thus, by the simple expedient of calling the drainage and incidental improvement district an "area" rather than an improvement district, which it is, the council creates what is actually (regardless of the name given it) an improvement district within an improvement district. I know of no statutory authority for such action. Section 12(b)(v) only authorizes more than one improvement to be combined in a *single improvement district.*

I am still dealing, also, with the arbitrary and unreasonable manner in which the city has taken from certain property owners a

fair and bona fide opportunity to protest. In order to make my point more lucid, I take the case of property owners within the drainage and incidental improvement "area." Their properties only are being assessed for these particular improvements.

If the legal owners of over half of this area protested against the drainage improvements and incidental improvements, they should in all fairness be entitled to defeat such improvements. That opportunity is taken from them, however, by reason of the fact that all property of the city is placed in one purported district. The result is a situation so hopeless, it is understandable that these particular property owners may not have tried to protest even though they might have voted against bonds if a bond election had been held.

In Gorrell v. City of Casper, Wyo., 371 P.2d 835, 840, we discussed statutory provisions then in effect for an enlarged district. We said undoubtedly the legislature contemplated that a protest by the owners of over one-half of the property situated in either the *local-improvement district* or the enlarged district (which includes the smaller) would be sufficient to prevent further proceedings. I am still of the same opinion as was expressed by the entire court at that time, i. e., that a protest by the owners of over one-half of the smaller area should be sufficient to prevent further proceedings.

Subsequent to the Gorrell decision and prior to the actions of the city council in this case, the legislature saw fit to repeal all provisions pertaining to an enlarged district, particularly § 15–506, W.S.1957. See Ch. 145, § 17, S.L. of Wyoming, 1963. That has left no pretense of authority to the City of Lander for an enlarged district, and it is now confined strictly to such an improvement district as can properly be classed as a *local-improvement district*.

Even though restrictions may be absent in Ch. 145 as to how far a city council may go in combining separate and distinct local improvements, the requirements of due process restrain and prohibit such combinations as become unreasonable, arbitrary and capricious. Pirie v. Kamps, 68 Wyo. 83, 229 P.2d 927, 929, 26 A.L.R.2d 647; In re Lutker, Okl.Cr., 274 P.2d 786, 789. See generally with respect to abuse of discretion, Thompson v. Conwell, Wyo., 363 P.2d 927, 928, and the cases cited therein.

If the combination is such that it effectively takes away from any group of property owners a reasonable opportunity to defeat any improvement for which they are being assessed, then it is unreasonable and arbitrary. The combination of improvements involved in the instant case, in my opinion, clearly has that effect.

These considerations compel me to take the position that the complaint of the plaintiffs has merit. I think the summary judgment for defendants should be reversed and not affirmed.