YARNELL et al., Florida Control Committee,
v. HILLSBOROUGH PACKING
CO. et al.
No. 7309.

Circuit Court of Appeals, Fifth Circuit.
April 14, 1934.

James Lawrence Fly and Ashley Sellers, Sp. Assts. to the Atty. Gen., and Francis P. Whitehair, of De Land, Fla., for appellants.

R. W. Withers, of Tampa, Fla., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

BRYAN, Circuit Judge.

Appellants are here complaining of an interlocutory injunction issued against them at the instance of appellees, and of the denial of their motion to dismiss the bill of complaint.

Appellees are two Florida corporations; one, the Hillsborough Packing Company, being engaged in buying and packing citrus fruit, shipping it out of Florida and selling it at points in other states; and the other, the Lake Fern Groves, in growing citrus fruit on its own grove and shipping it into other states through an agent other than its co-complainant. Appellants, likewise citizens of Florida, constitute what is known as the Florida Control Committee. This committee was selected in the manner provided in a marketing agreement entered into and a license issued by the Secretary of Agriculture, under section 8 (2) and (3) of the Agricultural Adjustment Act.[1] The Secretary was

---

[1] "Sec. 8. In order to effectuate the declared policy, the Secretary of Agriculture shall have power—

"(2) To enter into marketing agreements with processors, associations of producers, and others engaged in the handling, in the current of interstate or foreign commerce of any agricultural commodity or product thereof, after due notice and opportunity for hearing to interested parties. The making of any such agreement shall not be held to be in violation of any of the antitrust laws of the United States, and any such agreement shall be deemed to be lawful. * * *

"(3) To issue licenses permitting processors, associations of producers, and others to engage in the handling, in the current of interstate or foreign commerce, of any agricultural commodity or product thereof, or any competing commodity or product thereof. Such licenses shall be subject to such terms and conditions, not in conflict with existing Acts of Congress

also named a party defendant, but declined to appear voluntarily; and upon motion the bill was dismissed as to him. The order appealed from specifically enjoins appellants from in any manner interfering with shipments of citrus fruit by appellees; from revoking the license of any licensee who may handle citrus fruit for appellees, or either of them; from imposing on either appellee, or on any grower, shipper, or packer, who may aid it in the handling of citrus fruit, any penalty, fine, or forfeiture; and, in most general terms, from enforcing against appellees or either of them any regulation or supposed agreement prescribed or entered into pursuant to any provision of the Agricultural Adjustment Act. It was entered on the case made by the bill and exhibits thereto. Attached to the bill are the following exhibits:

(1) *The Marketing Agreement.* It applies to citrus fruit grown in and shipped out of the state. It was signed by numerous individual growers and shippers and many associations and exchanges interested in the citrus industry, and also by the Secretary of Agriculture, pursuant to section 8 (2) of the act. It provides for the selection by growers and shippers of a control committee, and authorizes that committee to make "prorate" orders and allotments covering shipments out of the State; to "eliminate" from trade channels all fruit not prorated or allotted, or sold in intrastate commerce; to investigate any suspected violation of the agreement by any shipper and order him to discontinue any violation found to exist, and, "in the event of non-compliance by the shipper with said order," the committee "shall report such non-compliance to the Secretary."

In addition, the committee is authorized to make assessments to defray expenses incurred in carrying out the agreement and in taking steps necessary to enforce collection. The expenses are to be proportionately levied on the basis of fruit shipped, and any funds remaining in excess of expenditures are to be refunded pro rata at the end of each season.

(2) *The License.* It was issued by the Secretary pursuant to section 8 (3) of the act. Its provisions are identical with those of the marketing agreement, except that it undertakes to bind all shippers of citrus fruit whether they are parties to the marketing agreement or not.

(3) *Orders Issued by the Control Committee.* That committee issued several orders in December, 1933, and January, 1934, restricting shipments in interstate commerce of certain late varieties of grapefruit and oranges, and other fruit of certain grades and size; and also restricting shipments to markets where citrus fruit is sold at auction. In addition, it made an assessment of 1 cent per box to defray its expenses. From time to time it also issued bulletins and notices to shippers.

Incorporated in the marketing agreement and the license is an elaborate "National Stabilization Plan" for marketing citrus fruit grown not only in Florida but also in other states and in Puerto Rico.

The Hillsborough Packing Company is a party to and signed the marketing agreement. The bill alleges that it became a party thereto through coercion and under duress, in that it was not advised and did not know that the act was invalid, or that the committee would issue such drastic orders, or assume to prevent it from shipping fruit to meet its usual requirements; and because it was induced to believe that its failure to sign up would be of no benefit to it, since the requirements and exactions contained in the agreement would in any event be applied to it.

The Lake Fern Groves did not become a party to or sign the marketing agreement. The bill alleges that it has left on the trees in its grove approximately 10,000 boxes of fruit; that the control committee "has forbidden all interstate shipment of certain small sized oranges, and approximately seventy-five (75%) per cent. of said plaintiff's mid-season oranges on its said grove are of these prohibited small sizes, though all of the said oranges are matured, wholesome, mar-

---

or regulations pursuant thereto, as may be necessary to eliminate unfair practices or charges that prevent or tend to prevent the effectuation of the declared policy and the restoration of normal economic conditions in the marketing of such commodities or products and the financing thereof. The Secretary of Agriculture may suspend or revoke any such license, after due notice and opportunity for hearing, for violations of the terms or conditions thereof. Any order of the Secretary suspending or revoking any such license shall be final if in accordance with law. Any such person engaged in such handling without a license as required by the Secretary under this section shall be subject to a fine of not more than $1,000 for each day during which the violation continues." 48 Stat. 34, 35, 7 USCA § 608 (2, 3).

ketable, and similar sizes and grades of oranges have always been heretofore disposed of by plaintiff's said agent at a profit. That said Florida Control Committee threatens and will, unless enjoined by this court, continue to threaten said plaintiff and its agent with penalties, prohibitions, injunctions and confiscation of its said fruit if it attempts to have same put in the channels of interstate commerce, and that the entire value of the said seventy-five (75%) per cent. of said crop will be totally lost to said plaintiff unless immediate relief is given said plaintiff by the injunction of this court; that said oranges will drop on the ground, rot and perish, and that said plaintiff's loss will be irremediable unless a temporary restraining order is granted said plaintiff as hereinafter prayed, and followed by injunction both temporary and permanent." The record discloses that appellants, having been served with notice of the application for temporary injunction, on the day before the bill was filed revoked the prorate orders of which complaint is made, but they said nothing about whether it was their intention to reinstate those orders or make others of similar import.

The interlocutory injunction was granted on the broad ground, as stated by the District Judge in an oral opinion which appears in the record, that the sections of the act involved and the means adopted for their enforcement by marketing agreement, license, orders and penalties, were unconstitutional and therefore void. On the question of jurisdiction, appellants argue that the Secretary of Agriculture is an indispensable party, that, because the prorate orders complained of have been revoked, the case is moot, and that in any event appellees had no right to come into court seeking an injunction without first exhausting their administrative remedy by applying to the Secretary for relief against the orders of the control committee. We agree at once that the Secretary, not being before the court, could not be enjoined from enforcing his regulations. Gnerich v. Rutter, 265 U. S. 388, 44 S. Ct. 532, 68 L. Ed. 1068; Webster v. Fall, 266 U. S. 507, 45 S. Ct. 148, 69 L. Ed. 411. But, if those regulations are indeed invalid, the control committee cannot shield themselves behind the Secretary, or compel compliance therewith in his name. Colorado v. Toll, 268 U. S. 228, 45 S. Ct. 505, 69 L. Ed. 927. It follows that the Secretary was not an indispensable party. As the control committee did not admit the illegality of the orders they revoked on the eve of the hearing, nor dis-

claim an intention to issue similar orders in the immediate future, the case is not moot. United States v. Trans-Missouri Freight Association, 166 U. S. 290, 308, 17 S. Ct. 540, 41 L. Ed. 1007; Southern Pac. Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 S. Ct. 279, 55 L. Ed. 310. Appellees attack the control committee's orders as being null and void, and so they had the right to apply to the court for relief in the first instance. Euclid v. Ambler Co., 272 U. S. 365, 386, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016.

On the merits, we think the District Court erred. The question of the constitutional validity of the Agricultural Adjustment Act (7 USCA § 601 et seq.) or of any action shown by the record before us to have been taken under it is not, in our opinion, properly presented for judicial decision. Injunction does not lie merely because an act is unconstitutional; but one seeking injunctive relief on that ground must further show that he is entitled to it on some clear ground of equity jurisdiction. Boise Water Co. v. Boise City, 213 U. S. 276, 29 S. Ct. 426, 53 L. Ed. 796; Northport Co. v. Hartley, 283 U. S. 568, 51 S. Ct. 581, 75 L. Ed. 1275. Inasmuch as the court did not acquire jurisdiction over the Secretary of Agriculture, it was powerless to enjoin the suspension or revocation of any license issued by him, or the enforcement of any fine or penalty resulting from orders which under the act only he can make.

The Hillsborough Packing Company signed the marketing agreement. That agreement was designed as a part of a general plan, the central idea of which is the cooperation of growers and shippers of the citrus-producing states to the end that better prices may be realized by prorating, allotting, and restricting interstate shipments. The act provides that such agreements shall be lawful notwithstanding the anti-trust laws. The validity of that provision is not assailed, and so the marketing agreement, being legal, is enforceable, even though other provisions of the act may be invalid. Section 14 (7 US. CA § 614). The excuses made by the packing company for signing fall far short of showing coercion or duress. It is a voluntary party to a valid agreement. The conclusion from this must be that it presents no case for relief in a court of equity. The bill as to it should be dismissed.

The case of the Lake Fern Groves stands a little differently, in that it did not sign or become a party to the marketing

agreement, or consent to be bound by the regulations prescribed by the Secretary in the form of a blanket license. But, notwithstanding this difference between its case and that of its co-complainant, the interlocutory injunction awarded it was, as it appears to us, improvidently granted. The Secretary has assumed by his license or regulations to confer on the control committee the power to make prorate orders in respect of the shipment of fruit; but the control committee has and claims no power to enforce such an order. It is only authorized to report violations of its orders of that nature to the Secretary for his consideration and final action. The committee may speak, but not as "one having authority." There is no averment that the committee has undertaken or will assume any power beyond that conferred upon it by the license. The bill goes no further than to charge that the committee threatens, and will continue to threaten, the complainant with penalties, prohibitions, and confiscation of fruit; it nowhere alleges an intention to carry the threats into execution. According to it, the committee's activities begin and end in nothing but threats. As the committee has no power, and so far as appears has not assumed and will not undertake to enforce either its prorate orders or its alleged threats, injunction does not lie against it. Pennsylvania R. R. Co. v. Labor Board, 261 U. S. 72, 85, 43 S. Ct. 278, 67 L. Ed. 536; Federal Trade Commission v. Claire Furnace Co., 274 U. S. 160, 47 S. Ct. 553, 71 L. Ed. 978. It is not even alleged that the committee unless enjoined will attempt to eliminate from trade channels or confiscate fruit shipped in violation of its orders. The committee itself, as authorized by the license, has levied an assessment of 1 cent per box upon each shipper for the purpose of defraying expenses. The assessment against the Lake Fern Groves on the shipment of its 10,000 boxes remaining on its trees would be only $100. The amount involved is too trivial to justify the issuance of an injunction. To recover it, this complainant has an adequate remedy at law against appellants. We are of opinion, therefore, that the Lake Fern Groves also has failed to show so far any cause or reason which entitles it to relief by injunction.

■ It may be that appellants will undertake to go further than they have yet done and assume authority directly or as the Secretary's agents to stop shipments, to confiscate fruit, or to do something else which the Lake Fern Groves may conceive to be a violation of its constitutional rights. In order to provide against such a contingency and to enable the Lake Fern Groves to apply for relief promptly, we hold that it is proper for the District Court to retain its bill of complaint for necessary future amendment. The present interlocutory injunction should be dissolved.

The order appealed from is reversed, and the cause remanded for further proceedings consistent with this opinion.