**ROYAL FARMS DAIRY, Inc., et al. v. WALLACE et al.**

No. 2265.

District Court, D. Maryland.
June 19, 1934.

Charles G. Page and Geo. M. White, both of Baltimore, Md., for plaintiff.

Wm. L. Marbury, Jr. (of Marbury, Gosnell & Williams), of Baltimore, Md., for defendants.

CHESNUT, District Judge.

This case arises in the course of the administration of the Agricultural Adjustment Act of Congress approved May 12, 1933 (7 USCA § 601 et seq.).

In the bill of complaint in equity, the plaintiffs, Royal Farms Dairy, Inc., a Maryland corporation, and Fred E. Saumenig, its president, allege that it is a dairy company engaged in the distribution of milk products, acting both in its purchases and sales wholly within the state of Maryland and is therefore engaged in intrastate commerce and in no way in interstate commerce or in the current or stream thereof.

The defendants named in the bill are Henry A. Wallace, Secretary of Agriculture of the United States, and Clinton L. Riggs, George S. Jackson and Isaac W. Heaps, constituting an "Adjustment Fund Committee" for the milk business in the Baltimore Production Area, appointed by the Secretary of Agriculture under the authority of the Act. The remaining defendant A. L. Mills, is an agent or representative of this Committee.

The object of the suit is to temporarily and permanently enjoin the defendants "from examining or attempting to examine the books, records and papers of the complainant, the Royal Farms Dairy, Inc., and from requesting or demanding that complainant Dairy or the complainant Saumenig, or any other officer or agent of said complainant Dairy furnish information from or access to the books, records and papers of the complainant Dairy."

The substance of the averments of the bill is that the Committee has demanded an inspection of the plaintiff's books and records for the purpose of ascertaining therefrom a proper accounting basis for an adjustment to be made by the Committee of payments by or to the plaintiff corporation, based on statistical data obtained by the Committee from the plaintiff and others engaged in the Baltimore Production Area with regard to the amount of milk purchased and distributed by them as classified by the Committee. It is alleged that

while the Commission has made the demand and has threatened to report a refusal to the Secretary of Agriculture for proposed action to enforce the demand, complainant corporation has not yet definitely refused compliance because to do so may possibly involve it in the commission of a felony under the provisions of the Act of Congress and subject it to heavy penalties. It is pointed out that section 8 (3) of the Act, 7 USCA § 608 (3), authorizes the Secretary of Agriculture "to issue licenses permitting processors, associations of producers, and others to engage in the handling, in the current of interstate or foreign commerce, of any agricultural commodity or product thereof. * * * The Secretary of Agriculture may suspend or revoke any such license, after due notice and opportunity for hearing, for violations of the terms or conditions thereof. Any order of the Secretary suspending or revoking any such license shall be final if in accordance with law. Any such person engaged in such handling without a license as required by the Secretary under this section shall be subject to a fine of not more than $1,000 for each day during which the violation continues."

And by section 10 (h) of the Act, 7 USCA § 610 (h), it is further provided that "the provisions, including penalties of sections 8, 9 and 10 of the Federal Trade Commission Act, approved September 28, 1914 [sections 48, 49 and 50 of Title 15], are made applicable to the jurisdiction, powers, and duties of the Secretary in administering the provisions of this chapter and to any person subject to the provisions of this chapter, whether or not a corporation. Hearings authorized or required under this chapter shall be conducted by the Secretary of Agriculture or such officer or employee of the Department as he may designate for the purpose. The Secretary may report any violation of any agreement entered into under part 2 [sections 608 to 619] of this chapter, to the Attorney General of the United States, who shall cause appropriate proceedings to enforce such agreement to be commenced and prosecuted in the proper courts of the United States without delay."

Section 10 of the Federal Trade Commission Act (15 USCA § 50) provides penalties for the refusal to grant the examination of books and records of the corporation subject to the provisions of the Act, and makes "any person who wilfully refuses to submit, guilty of a felony and subject to a fine of not less than $1,000 nor more than $5,000, or to imprisonment for not more than three years or both."

The bill alleges that the demand made by the Committee is an unauthorized intrusion into the business and affairs of the complainant corporation not in fact and in law authorized by the Act of Congress; and even if the Act should be construed to apparently authorize such interference with the plaintiff's business and affairs, the Act itself is unconstitutional and the attempted action is an invasion of the plaintiff's individual constitutional rights, for various reasons particularly alleged in the bill. The license referred to is a general one issued by the Secretary of Agriculture under the Act, and not a special one to the plaintiff corporation, which has not requested or accepted it in any way.

■ On the filing of the bill an order of court was passed requiring the defendants to show cause why the preliminary injunction prayed for should not be issued "provided, however, the defendant, Henry A. Wallace, Secretary of Agriculture, is not required to show cause unless he voluntarily appears to answer the cause." The Secretary of Agriculture, being individually a citizen of the state of Iowa, and having his official residence in the District of Columbia, is not subject to service of process in this cause issued from this court, and no such service has been attempted on him and he has not voluntarily appeared. Therefore, it is clear he is not a party to the case.

■ The other defendants have filed an answer to the order to show cause with certain exhibits and affidavits, the substance of which is that they place their resistance to the issuance of the preliminary injunction on *procedural* grounds including particularly the contention that the Secretary of Agriculture is an indispensable party to the proceeding and that without his presence as a party no injunction can properly be issued against the Committee or their agent (all of whom are residents of the state of Maryland) as they have *no powers of enforcement of* the Act. This answer also sets up the fact that the Committee has *already made the demand* for inspection of the complainant's books and records and that it would be wholly useless to enjoin them from the making of such a demand. The defendants have not yet answered the bill on its merits, but have moved to dismiss the bill. At this stage of the case the only question presented is whether a preliminary injunction should be issued or the bill should be dismissed. Only procedural points and not the substantial merits of the case are now presented; and there is at present no necessity of passing on the several constitutional questions raised by the complainant's bill. The question now before the court is not the validity of the Act but whether the defendants in the course of the administration of the Act, should be enjoined from further demanding an inspection of the plaintiff's books and records or otherwise interfering with the plaintiff's business activities.

■ The primary question for consideration on the papers as now submitted is whether the plaintiff is subject to the terms of the Act and bound by the provisions of the general license issued by the Secretary of Agriculture under the terms of the Act. If not, then it is clear the plaintiff corporation is not subject to the demands of the Committee. In the limited form in which the question is now presented it is not necessary to express any opinion on the ultimate question on the merits of the case, but only to inquire whether the plaintiff has made a prima facie showing that it is not subject to the terms of the Act and the license. In the plaintiff's bill it is expressly alleged with regard to its business activities in processing, bottling and distributing fluid milk and cream, "that said milk and cream is purchased solely from farmers who produce the same within the State of Maryland, and who are licensed under the provisions of the Charter of the City of Baltimore by the Commissioner of Health of said City to ship milk to a distributor of fluid milk in Baltimore City; and that the said milk is shipped to Complainant Dairy at its plant in Baltimore City from whence it is sold and distributed by Complainant Dairy only to persons within the City of Baltimore and its environs within the State of Maryland; that at no time is said milk and cream, from the time it is produced on the farm to the time it is finally sold and delivered to customers of the Dairy, taken out of the State of Maryland or shipped in interstate commerce; and at no time is the said milk or cream or any part or product of it, from the time of its production to the time of final sale and delivery by Complainant Dairy, within the stream of interstate commerce, or intermingled with articles being shipped in interstate commerce." Defendants' answer to the order to show cause does not deny the above quoted averments of the bill. But from the exhibits filed with the answer it may be inferred that it will hereafter be contended that the plaintiff corporation is subject to the Act and the terms of the license. Defendants admit that they have made the demand upon the plaintiff for the information from its books and records and their correspondence with the plaintiff indicates that if the demand is not complied with action hereafter may be taken by the

Secretary of Agriculture or the Attorney, General of the United States, to enforce compliance, but it is stressed by the defendants, constituting the Committee, that *they* have no powers of enforcement and it is not shown either by the plaintiff nor plainly inferrable from the defendants' answer that any further action is presently contemplated to be taken by it. It also appears from a recital in the license, Section II, as follows:

"Whereas, the Secretary finds that the marketing of milk for distribution as fluid milk in the Baltimore sales area and the distribution of said fluid milk are in both the current of interstate commerce and the current of intrastate commerce, which are inextricably intermingled;

"III. Now, therefore, the Secretary of Agriculture, acting under the authority vested in him as aforesaid, hereby licenses each and every Distributor of fluid milk for consumption in the Baltimore sales area to engage in the handling in the current of interstate or foreign commerce of said fluid milk subject to the following terms and conditions."

Then follow very detailed provisions as to the conduct of the business of each licensee whereby the plaintiff corporation, if subject to the terms thereof, is limited and restricted as to the persons from whom milk shall be purchased and the prices to be paid therefor and the prices of resale, which, according to the allegations of the bill, will seriously and prejudicially affect the plaintiff in the conduct of its business.

It is important to be noted that the defendants have so far not alleged any facts other than the recital in the license above mentioned, which would justify the conclusion that the plaintiff corporation is subject to the terms of the Act or of the license. As already noted, the Act itself, section 8 (3), 7 USCA § 608 (3), confers power on the Secretary of Agriculture, "to issue licenses permitting processors, associations and producers, and others to engage in the handling, *in the current of interstate or foreign commerce,* of any agricultural commodity or product thereof, or any competing commodity or product thereof." (Italics supplied.)

In this respect at least the Act is clearly based on the power of Congress to regulate commerce among the states. It, therefore, seems clear that unless the plaintiff corporation is engaged in interstate commerce or in activities which directly burden such commerce, under the decisions of the Supreme Court, it is not subject to the terms of the Act or of the license. The plaintiff's business

activities, as expressly averred in the bill, present a typical case of intrastate commerce as distinguished from interstate commerce, and seemingly do not warrant the inference that it is engaged (in the wording of the Act) "in the handling, in the current of interstate or foreign commerce, of any agricultural commodity or product thereof, or of any competing commodity or product thereof." Nor are any facts now averred by the defendants from which it could be said, in the language of the recital in the license above quoted, that the plaintiff corporation's business activities "are in both the current of interstate commerce and the current of intrastate commerce which are inextricably intermingled." Of course, if the bill is answered on the merits, the factual situation may possibly be found to be different. But dealing with the situation as now presented, I am of the opinion that the plaintiff has made out a prima facie showing that it is not subject to the terms of the Act or of the license and therefore is not obliged to comply with the demands of the Committee and consequently is entitled to such relief as the court is competent to give it in this proceeding by preliminary injunction against further activities or attempted interference by the defendant Committee if there is imminence of such further activities by the Committee and if the same will cause irreparable loss and injury to the plaintiff corporation.

But the defendants stress the consideration that the plaintiff has not made out a case showing even the probability of irreparable injury. They emphasize the fact that so far as they are concerned they have already made the demand upon the plaintiff and it is not shown that they contemplate making any further demand. And they point out, as seems to be true, that they have no powers of enforcement under the Act or under the license which reside only in the Secretary of Agriculture and the Attorney General of the United States, and further they stress the point that the Secretary of Agriculture is an indispensable party to the case.

I do not take the view that the Secretary of Agriculture is an indispensable party to the maintenance of this suit although he is a proper party and it may very well be that without his presence full and effective relief cannot be given to the complainant. Yarnell v. Hillsborough Packing Co. (C. C. A. 5) 70 F.(2d) 435, decided April 14, 1934; Colorado v. Toll, 268 U. S. 228, 45 S. Ct. 505; 69 L. Ed. 927; 28 USCA § 111; Equity Rule No. 39 (28 USCA § 723); 28 USCA § 112.

In my opinion the more substantial

answer to the plaintiff's prayer for preliminary injunction arises from the consideration that the defendants apparently have no powers of enforcement under the Act; and the utmost they can do is report the complainant's refusal to the Secretary of Agriculture for his action. Furthermore the Committee has already made its demand and it would be futile to attempt to enjoin a consummated act.

The Judicial Branch of the government should interfere with the administrative activities of the Executive Department only where it is clearly necessary to do so to protect individual constitutional rights. The granting of an injunction by a court of equity is an exercise of its extraordinary jurisdiction which ordinarily will not be exerted unless the plaintiff can make a showing of probable irreparable injury, and has no adequate remedy at law. As the case now stands, it does not seem to me the plaintiff has made out such a case of probable irreparable injury as necessitates the issuance *at the present time* of an injunction against the defendants; especially as the effectiveness of such an injunction, if issued, would be very doubtful in the absence of the Secretary of Agriculture as a party to the case. Yarnell v. Hillsborough Packing Co. (C. C. A. 5) 70 F.(2d) 435, decided April 14, 1934; Grand Trunk Western R. Co. v. Curry, 162 F. 978 (C. C. Cal.); White v. Sparkill Realty Corp., 280 U. S. 500, 510, 50 S. Ct. 186, 74 L. Ed. 578; Dalton Adding Machine Co. v. State Corp. Comm. of Virginia, 236 U. S. 699, 35 S. Ct. 480, 59 L. Ed. 797; Continental Banking Co. v. Woodring, 286 U. S. 352, 368, 52 S. Ct. 595, 76 L. Ed. 1155, 81 A. L. R. 1402; Federal Trade Comm. v. Claire Furnace Co., 274 U. S. 160, 47 S. Ct. 553, 71 L. Ed. 978; Gnerich v. Rutter, 265 U. S. 388, 44 S. Ct. 532, 68 L. Ed. 1068; Alcohol Warehouse Corp. v. Canfield, 11 F.(2d) 214 (C. C. A. 2); Webster v. Fall, 266 U. S. 507, 45 S. Ct. 148, 69 L. Ed. 411.

We are not dealing here with a case where the law on its face is clearly applicable to one who complains that the Act is unconstitutional and where the complainant is subjected to heavy penalties if he unsuccessfully risks the assumption of its unconstitutionality. In such cases the jurisdiction of equity to enjoin defendants in the enforcement of an invalid law at the request of the complainant is well established. Ex parte Young, 209 U. S. 123, 163, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764;

Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 S. Ct. 338, 64 L. Ed. 596; Federal Trade Comm. v. Millers' Nat. Federation, 57 App. D. C. 360, 23 F.(2d) 968. Nor are we dealing with a case where the injunction is asked against an officer who clearly has power to enforce the law if valid. Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182.

If, as averred in its bill, the plaintiff corporation is not subject to the Act, it will, of course, have an adequate defense at law to any proceedings for the imposition of penalties hereafter brought against it in this state through subsequent administrative action by the Secretary of Agriculture or the Attorney General. It is true that what the plaintiff is especially seeking in this proceeding is an avoidance of the possibility of such subsequent proceedings, but the essential difficulty in the way of securing that relief in this particular proceeding is the absence of the Secretary of Agriculture as a party to the case. The plaintiff can, of course, avoid this procedural difficulty by an equity proceeding in the District of Columbia where the Secretary of Agriculture will be subject to the process of the court.

However, while the case does not justify the present issuance of a preliminary injunction, I think the bill should not be dismissed, but should be retained, as a materially different situation may develop from the defendants' answer on the merits. They have already made a demand upon the plaintiff which the plaintiff says it has not definitely refused although the defendants' answer seems to have treated the plaintiff's conduct as a definite refusal. The defendants are admittedly acting under the authority of the Secretary of Agriculture and have not definitely stated that they will not make any further efforts under his instructions to require compliance with the terms and conditions of the license by the plaintiff. The case is an extremely important one, both from the standpoint of the plaintiff corporation's individual rights and in its public aspects. Therefore, I think despite the procedural difficulties which seem to be obstacles in the plaintiff's way to obtaining an adjudication of its rights on the merits, the defendants should be required to answer the bill and jurisdiction should be retained to give the plaintiff the benefit of such relief, if any, as dependent upon subsequent events, may be determined to be proper. This was the course adopted in a somewhat similar situation by the Circuit Court for the

Fifth Circuit in Yarnell v. Hillsborough Packing Co., 70 F.(2d) 435, decided April 14, 1934.

I will, therefore, sign orders when submitted by counsel (1) refusing to issue a preliminary injunction *at the present time,* but with leave to the complainant to reapply for the injunction at any time hereafter for good cause shown; (2) overruling the defendants' motion to dismiss the bill of complaint; and (3) requiring the defendants to answer on the merits within the time heretofore prescribed by order of court.