SHONI URANIUM CORPORATION,
Appellant (Plaintiff below),
and
Western Nuclear, Inc. (Plaintiff below),
v.
FEDERAL–RADOROCK GAS HILLS PARTNERS, Appellee (Defendant below).
No. 3425.

Supreme Court of Wyoming.
Nov. 18, 1965.

G. Joseph Cardine, Casper, for appellant.

Hettinger, Leedy & Harrington, Riverton, and Van Cott, Bagley, Cornwall & McCarthy, Leonard J. Lewis, Salt Lake City, Utah, and James L. Hettinger, Riverton, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered the opinion of the court.

In this court's earlier decision, Vitro Minerals Corporation ·v. Shoni Uranium Corporation, Wyo., 386 P.2d 938, equity was invoked in resolving the case, and the trial court was instructed to take proper steps to see that the views expressed in the opinion were effectuated and to that end retain jurisdiction for such period as might be deemed necessary. Prior to the time the original decision was issued in this court, Vitro transferred to Federal-Radorock Gas Hills Partners, which has been made and now is without objection the sole defendant occupying the position of and succeeding to the rights of Vitro. Although certain rights of Shoni were conveyed to Western Nuclear, Inc., Western has reconveyed to Shoni and Shoni is now the sole plaintiff party in interest, subject to any obligations or rights accruing during the period of ownership by Western Nuclear.

In the original action, Shoni's position was that: there had been a determination of a commercial ore body; advance royalty payments were due; and, further, Vitro had failed for a period of six consecutive months to carry on operations and, therefore, its agreement with Shoni should be terminated and plaintiff restored to the leased claims and properties in question. This court held there had been no determination of a commercial ore body and that although Vitro had failed to carry on operations it was equitable that, under the circumstances present, there be no termination but Shoni should receive the minimum royalty payments for the six-month period. However, in so invoking the principle of equity, we noted our intention that equity having acquired jurisdiction for one purpose would retain jurisdiction to the final adjustment of all difficulties between the parties arising out of the action presented.

Following the mandate of this court on January 14, 1964, concerning the original decision, the parties applied to the trial court for an amended judgment to conform to the court's opinion, and on April 13 the

trial court entered an Amended Judgment, stating it would "retain jurisdiction of this action for a period of sixty days * * * for the purpose of seeing that the views expressed by the Supreme Court * * * are effectuated" and providing, inter alia, that: plaintiff if it wished might allege by appropriate pleadings that defendant was not exercising due diligence in the conduct of operations; if plaintiff made such allegations, the defendant should answer; and the court would conduct a full hearing with respect to the matter for the purpose of determining whether or not defendant was conducting operations with due diligence. Plaintiff subsequently filed a petition for relief, alleging that defendant had not exercised due diligence in the conduct of operations on the mining claims, and that plaintiff was informed and believed defendant had not explored the open sides of the Blackstone 6 and 7 ore body in order to determine whether or not it was "commercial" and that the shallow drilling which had been engaged in was not diligence.

There were interrogatories and answers and each party also gave notice for and took depositions, which were made a part of the record. Defendant answered the plaintiff's petition for relief by general denial, stating that plaintiff had alleged breach of agreement, had repudiated and attempted to terminate the agreement and accomplish a forfeiture of the claims, and had constituted a continuous threat to and cloud upon Federal's interest in and right to possession of the claims, rendering such interest in and right to uncertain; and defendant filed motion for summary judgment with supporting affidavits. Plaintiff filed Notice for Cross-Motion for Summary Judgment, and the court entered summary judgment for defendant and provided that "this action be and the same is hereby terminated and concluded on the merits * * *." From this summary judgment, plaintiff appealed.

A resolution of the present controversy must take into consideration the developments in the original case, Vitro Minerals Corporation v. Shoni Uranium Corporation, supra, and the ideas therein expressed, one of which is of special significance: We there pointed out that despite the testimony of lessee's own geologist and engineer, showing the discovery of rich uranium ore on Blackstone 6 and 7, there had not yet been a "discovery of a commercial ore body," which determination depends upon various factors, including extent of deposit as yet undelineated by exploration. It should be noted also that we held lessor's charged failure of lessee for more than six months to carry on the operations in the agreement had been excused by an attempted cancellation through notice and suit, thereby creating an uncertainty as to lessee's obligation to proceed.

It will be recalled that Adamson, Vitro's geologist, testified as to the discovery on Blackstone 6 and 7, "Considered on the basis of present reserve, it is comparable to many of the better ore bodies in Wyoming and has a potential of being one of the best in respect to contained pounds of uranium." "In the event that additional ore reserves are considered necessary to prove the economics of this deposit, many drill sites could be selected that could expand reserve appreciably. Location of additional holes of this nature is readily seen upon examination of the mineralization map. It is recommended that if these holes are drilled that they be drilled on 100 foot centers stepping out from the known ore body." Vitro Minerals Corporation v. Shoni Uranium Corporation, supra, 386 P. 2d at 941. There was no contradiction of this evidence showing a rich discovery and the desirability of exploration concerning it. In the present controversy, Ellerman, Federal's project manager, confirmed the existence of the mineralized area as reported by Adamson. Accordingly, the principle announced in Union Sulphur Co. v. Texas Gulf Sulphur Co., Tex.Civ.App., 42 S.W.2d 182, 185–186; 58 C.J.S. Mines and Minerals § 183, p. 390, became applicable: "It is a well-settled general rule that leases of this character import an implied cove-

nant to reasonably develop the mineral resources of the demised premises. Upon the discovery * * * there was an implied obligation on the part of the lessee to do whatever was reasonably necessary under the circumstances *(1) to ascertain whether the deposit existed in commercial quantities;* and (2) thereafter to reasonably develop the lease * * * both as regards exploration and production." (Emphasis supplied.) Thus, in the instant case, an essential adjunct to any showing of due diligence would be reasonable steps in ascertaining the "commercial" nature of the known ore body.

■■ Our initial concern must be with the procedure which ensued after the decision here. It is well settled that the court was justified in invoking equitable principles in deciding the cause. St. Louis Union Trust Co. v. Galloway Coal Co., N.D.Ala., 193 F. 106 (affirmed, 5 Cir., 201 F. 1022); Annotation, 60 A.L.R. 901, 925; and that equity once having been invoked, the court is entitled to retain jurisdiction until the relief has been accorded, Vargas v. Superior Court of Apache County, 60 Ariz. 395, 138 P.2d 287; Yarnell v. Hillsborough Packing Co., 5 Cir., 70 F.2d 435, 92 A.L.R. 1475; and see 1 Pomeroy, Equity Jurisprudence, § 181 (5 ed.); 19 Am.Jur. Equity § 127; 30 C.J.S. Equity § 67. Such retention, however, does not envision the court's being a perpetual master or umpire, but in this case only to determine whether or not there has been a reasonable exercise of due diligence.

■■ Although it was somewhat unusual that the parties should have here employed and the court approved the use of a summary judgment, a court of equity has wide discretion in accomplishing its purpose. Ex parte Moore, 44 Wyo. 92, 8 P.2d 818, 825. The defendant in its motion for summary judgment stated that there was no material issue of fact to be tried. The plaintiff did not actually file a cross-motion for summary judgment but gave notice that it would, stating as a ground that there was

no genuine issue of material fact, and apparently presented such motion to the court orally at the time of the hearing on defendant's motion. The court in its summary judgment found that "there is no genuine issue as to any material fact to be decided by the court * * *." These statements of both the parties and the court present an anomalous and irreconcilable situation since there were issues of fact essential of determination. Various instances might be cited, perhaps the most fundamental being the substantial disagreement in the views of Ellerman, Federal's project manager, and Adams, President of Western Nuclear, as to what was necessary for the exploration of the find on Blackstone 6 and 7. In order to arrive at a judgment the court necessarily had to evaluate the testimony and decide which of the diverse views to accept. Although our research discloses no procedural situations identical to the one before us, it is well recognized that the circumstance of both parties having moved for summary judgment is of itself insufficient to establish that there is no issue of fact. Hycon Manufacturing Company v. H. Koch & Sons, 9 Cir., 219 F.2d 353, 355 (certiorari denied 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278); Brawner v. Pearl Assurance Company, 9 Cir., 267 F.2d 45, 46; 3 Barron and Holtzoff, Federal Practice and Procedure § 1239, p. 176 (1958). It is, of course, possible that a court in a nonjury case decide a cause upon the facts which are available from the pleadings, affidavits, depositions, and admissions on file where both parties move for summary judgment and the court finds that there are issues of fact but that the facts have been fully developed at the hearing on the motion. Tripp v. May, 7 Cir., 189 F.2d 198, 200; 3 Barron and Holtzoff, Federal Practice and Procedure § 1239, p. 178 (1958). However, a judgment of that sort would be a decision on the merits. Since in the instant case the court was unjustified in finding that there was no genuine issue as to any material fact, the summary judgment was improper and cannot stand.

In the light of this holding, it is unnecessary to consider the Amended Judgment of April 13, 1964, except to note that the limited time thereby accorded (especially in view of the inclement spring weather asserted by defendant) was insufficient for either party to make any reasonable showing as to due diligence or the lack of it.

The summary judgment is reversed and the cause remanded to the trial court with instructions to retain jurisdiction until it shall, pursuant to the views expressed in Vitro Minerals Corporation v. Shoni Uranium Corporation, supra, and here, have made an initial determination of defendant's exercise of due diligence in the exploration of the leased lands under the agreement. In such determination, a consideration of any past happenings or activities by either of the parties would be relevant only to the extent that they bear upon exploration from this time forward. In that connection, it is our view that the retention of jurisdiction as indicated herein should continue only until such time as the court makes initial determination as to the exercise of due diligence. Should there be later difficulties between the parties, any asserted relief should be sought by a new action.

Reversed and remanded with directions.

Mr. Justice McINTYRE, concurring.

There is nothing in the opinion of Chief Justice Parker that I would disagree with. However, since further proceedings are being required, I think I should express my personal views on one or two matters which will be involved in these further proceedings. In doing so I wish to make it clear I am speaking for myself only, and not for any of the other justices.

It must be and is an accepted principle that when equity has acquired jurisdiction for one purpose, it will retain jurisdiction to the final adjustment of all difficulties between the parties arising out of the action presented. To me, this does not mean equity would be justified in rewriting the contract which the parties themselves have entered into.

In Vitro Minerals Corporation v. Shoni Uranium Corporation, Wyo., 386 P.2d 938, 940, we set out sufficient of the contract to show the parties had defined for themselves "a commercial ore body." This definition listed the degree of uranium mineralization which would be necessary for ore to be considered commercial, at different depths up to 80 feet. The contract then provided that the lessee in its discretion shall determine whether ore bodies with deeper overburden than that specified constitute commercial ore bodies. The ore under Blackstone 6 and 7 claims apparently occurs from 570 to 770 feet below the surface.

Equity probably would not permit the lessee to arbitrarily and unreasonably withhold its determination that ore bodies with more than 80 feet of overburden are commercial, but that determination should be made in the light of the definition agreed upon.

When we say an essential adjunct to any showing of due diligence would be "reasonable steps" in ascertaining the "commercial" nature of the known ore body, I think the term "commercial" must be thought of in the light of the definition adopted by the parties themselves. In turn, the determination of what amounts to *reasonable steps* in ascertaining the commercial nature of ore, in my opinion, ought to be judged accordingly.