Catherine MEALEY, individually, and on behalf of herself and all other property owners in Improvement District No. 12 who having filed protests with the City Council are similarly situated, Appellant (Plaintiff below),

v.

The CITY OF LARAMIE, Wyoming, a municipal corporation, Vern Shelton, Mayor, Lawrence W. Clark, Larry Deaver, Frank Moore, James Spiegelberg, William Ward and Richard Weeks, members of the City Council of said City and Harold Yungmeyer, City Manager of said City, Appellees (Defendants below).

No. 3866.

Supreme Court of Wyoming.

July 31, 1970.

Catherine Mealey, Laramie, for appellant.

Dean W. Borthwick, Cheyenne, Thomas S. Smith, City Atty., Laramie, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Chief Justice GRAY delivered the opinion of the court.

Plaintiff, on her behalf and on behalf of others similarly situated as owners of property within Local Improvement District No. 12, herein described as a "downtown improvement district" in the city of Laramie, Wyoming, and created by the adoption of City Ordinance No. 355, brought an action seeking to have said ordinance declared unconstitutional, illegal, null and void on several grounds and also sought to enjoin the enforcement thereof. On motion of the defendants, pursuant to Rule 56, W.R.C.P., summary judgment was entered below upholding the validity of the ordinance and denying injunctive relief. Plaintiff has appealed, claiming there were genuine issues of material facts to be tried and that the court erred in disposing of the litigation under the rule.

The general historical facts pertaining to the matter are not seriously disputed, and without here passing upon or approving the form in which a part of the information was presented the record discloses that in the year 1966 there was some activity by an organization identified as the Laramie Downtown Redevelopment Corporation to have the city create an urban renewal project out of the downtown area to include, among other things, the reconditioning or reconstruction of the streets. For some reason not disclosed by the record, the undertaking was never brought to fruition. In early July 1967, however, the corporation presented a petition signed by certain interested property owners to the city council requesting that it create a downtown improvement district out of the area under consideration, utilizing urban renewal funds if deemed advisable. While the record is not entirely clear, it appears that J. T. . Banner & Associates was thereafter employed to prepare preliminary plans and specifications for such a district with boundaries substantially conforming to those requested, and on March 4, 1969, the city council on its own initiative adopted the necessary resolution of intention to form such a district—identified as Local Improvement District No. 11—and on May 20, 1969, passed an ordinance creating the district. Subsequently the ordinance was invalidated by a decree of the district court. Following this the city council decided to reconsider the matter of the improvements to be made and other related matters as a basis for the creation of another local improvement district of substantially the same area contained in District No. 11. Toward that end an advisory committee consisting of some eight members was appointed to recommend changes and modifications in the previous plan, which was done, and there then followed the adoption of those recommendations by the city council and the enactment of the ordinance creating Local Improvement District No. 12. In this connection we would point out that the ordinance creating District No. 11 is not contained in the record and thus no comparison of significant changes in the provisions of that ordinance and the ordinance creating District No. 12 can be made. We gather from the affidavits, however, that the principal change—exclusive of the State highway portion—was the reduction in the widening of the streets in most instances from 60 feet, as initially proposed, to a uniform width of 56 feet, which would

involve increases in width varying from a few inches to as much as four feet and the elimination of "one or two blocks" from the boundaries fixed for District No. 11.

Without going into too much detail at this time, the general purpose of creating District No. 12, as stated in the ordinance, was to make "certain street and alley improvements, consisting of changing roadway widths, paving, curb and gutter, filling sidewalk basements, sidewalks, storm sewer changes, street lights, traffic signals and fire alarm system, on the streets, alleys and intersections herein designated." The total estimated cost of the project was in the sum of $1,140,236 of which $887,657 was to be assessed against the owners of property within the district and $252,379 was to be paid from other city funds and the Wyoming Highway Department. The lots contained in some 21 of the described city blocks included within the district were, under the statutory method selected by the city council for assessment of special benefits, to be assessed in amounts ranging from $2,243 to $4,563 per lot, depending upon the size and location of the lots.

Turning now to plaintiff's complaint, it is most prolix and voices many grievances against the city council, its members, employees, and advisors as to the method and manner in which the proceedings leading up to the adoption of the ordinance were carried on. In our view a large number of the charges made are untenable under principles heretofore laid down by this court in several cases dealing at length with the law pertaining to local improvement districts—none of which incidentally are even mentioned in plaintiff's brief or argument—and for such reason we shall not undertake to run the "gamut," so to speak, of the complaint but confine our consideration to three claims which we think merit consideration.

Of those three the most critical and difficult is the claim pertaining to the proposed improvements of the streets. With respect to this the ordinance provides:

"The paving improvements in the roadways and intersections listed above in Section 3 shall consist of removing existing pavement and concrete or gravel base, excavation, building up and compacting a subbase and base, shaping, treatment thereof with an asphaltic material, and construction thereon of a hotplant bituminous surface from two to two and one-half inches thick covered with an asphalt and rock aggregate seal coat. The base grading and paving will be to the roadway face of the concrete gutter. The preparation of final plans and specifications shall include a determination as to the economic and engineering feasibility of salvaging existing base. * * *"

Concerning the proposal, plaintiff in her complaint alleges:

" * * * Said ordinance provides that all streets within said Improvement District shall be torn out and replaced in order that the streets may be widened or narrowed a few inches and thereby be of a uniform width. That most, if not all, of said streets have a good base and no reasonable purpose is served by removing and replacing said streets. That said ordinance requiring removal and replacement of said streets at the owners' expense to change the width a few inches so that all the streets will be uniform is arbitrary, capricious and an abuse of discretion. * * *"

As noted above, defendants did not respond to such claim by answer but chose to challenge it by motion for summary judgment. Upon review and analysis of the affidavits and other papers submitted by the defendants in support of the motion and the affidavits and other papers submitted by plaintiff in resistance thereto it appears that the frontal attack made by plaintiff on this phase of the case was in substance narrowed down to whether or not the city council was arbitrary or capricious in eventually determining that the salvaging of the existing concrete base of the paving in most of the streets involved

was uneconomical and lacked "engineering feasibility."

In connection with the issue so tendered we have always adhered to the view that under the statutes pertaining to the creating of local improvement districts the cities and towns have been granted plenary powers in fixing the boundaries of such districts and the nature and extent of the improvements to be made. We have also said that by so doing the cities are exercising a legislative power which "rests in the legislative discretion of the city council," Marion v. City of Lander, Wyo., 394 P.2d 910, certiorari denied 380 U.S. 925, 85 S.Ct. 929, 13 L.Ed.2d 810, rehearing denied 380 U.S. 989, 85 S.Ct. 1352, 14 L. Ed.2d 283. Nevertheless, we have also pointed out that the courts will interfere if the city council exceeds its powers or exercises its discretion in a fraudulent, arbitrary or capricious manner, 394 P.2d at 916. See also 13 McQuillin, Municipal Corporations, § 37.25, p. 93, and § 37.90, p. 319 (3d Ed.).

Under that concept it appears that plaintiff states a claim on the phase of the case pertaining to the salvaging of the concrete base and defendants, although intimating it was untenable as a matter of law, were not content to rely upon that position but chose to challenge the plaintiff's claim on the basis that it did raise a factual issue, and we think properly so, for the reason that it is readily discernible that the issue so tendered is technical and complex and its solution is dependent upon evidence adduced through witnesses having special knowledge and training in such matter.

Consequently we turn to the showing made by the parties at the time the motion for summary judgment came on to be heard to determine whether or not there was a genuine issue of a material fact necessitating a trial. With respect to this, there were several affidavits submitted by both parties but, as indicated, our consideration will largely be confined to the affidavits of the engineers presently practicing their profession, all of whom were shown to be well

qualified to express their views. In doing so we are, of course, confronted with the unusual in that the views expressed by the engineers, as might be anticipated, are largely conclusionary and set forth few, if any, specific facts or detail upon which their opinions were based.

For example, the affidavit of W. J. Nelson, City Engineer, attached to defendants' motion says concerning the streets in the city that they were constructed some time prior to the year 1930 and have deteriorated to the extent that they cannot be maintained and repaired sufficiently to meet "tolerable standards" and do not meet standards established by the city 25 years ago; that the streets "have outlived their usefulness and should be replaced"; and that he along with other consulting engineers "after considerable investigation" recommended the kind and character of improvements to be included in District No. 12.

The affidavit of J. T. Banner also attached to defendants' motion and whose firm was employed to prepare the plans and specifications for all of the improvements, states among other things that the streets and related improvements "have become obsolete so as not to meet tolerable standards"; that money spent on repair and maintenance would be wasted; that analysis of costs showed it would be less expensive "to replace this existing pavement, as compared to the cost of providing five to seven inches of asphalt overlay * * * to lower the height of the curb"; and that the "cracking pattern" of the existing concrete base when eliminated and replaced as proposed would accommodate heavier loading and "higher vehicle intensities."

The affidavit of W. E. Sutton, Chief Engineer of the Wyoming Highway Department, was in the same vein with respect to the streets involved as a part of the State highway system.

As opposed to the foregoing views the plaintiff in support of her contention that there was a genuine issue of material fact to be tried submitted the affidavit of R. Lee Donley, which states that on February

28, 1970, he "visually inspected" the streets of the downtown area—excluding the State highway portion—and observed "no major subgrade failures and no major surface failures" except at a few intersections and in small areas adjacent to the curblines; that "the concrete base of not more than 5% of the street area has been destroyed but an inventory of needed repairs should be made to verify this estimate"; that further testing should be done "to determine the strength of the concrete base, the gravel subbase, if any, and the subgrade soils"; that except for areas adjacent to the curbs and a few intersections, asphaltic overlay would result "in good subgrade and street surface which will be most adequate and satisfactory" under the street plan; and "that the repair overlay cost will be shown to be much less than a complete tear out and replacement program, provided that tests of the concrete base, gravel subbase under the concrete and subgrade soils under the gravel are satisfactory."

It should be noted, of course, that the view expressed by Donley is from a visual inspection, but he does point out that further investigation of the concrete base and the subgrade soils should be made and an inventory taken of the "needed repairs" so that "cost comparison between proposed repair and proposed reconstruction can be made." The affidavit of J. T. Banner, of course, indicates that this has been done but does not disclose the detail of such a study and does not indicate that his conclusions were reached by other than visual inspection.

Plaintiff in her affidavit among other things says that she attended the proceedings had by the trial court wherein District No. 11 was invalidated and that at such hearing the city engineer testified that to his knowledge no core drill tests had been made of the base of the streets in the proposed district. However, in answer to interrogatories submitted to the city on March 4, 1970, as to the matter of "core drill testing" and if made to "attach a log of the drilling," the city engineer and Gene Hackleman of J. T. Banner & Associates answered that core drilling had been done but that such information was not in their possession but was in the possession of the Wyoming State Highway Department and available. Such answers, however, fail to indicate whether such tests were made only in the streets for which the department was responsible or on all of the streets embraced within the improvement district and plaintiff, of course, would have been well advised to have obtained through discovery whatever information was available. Nevertheless, in the light of the state of the record we cannot say such failure was fatal.

It must be remembered that the burden is on the movant to demonstrate clearly that there was no genuine issue of material fact and that movant is entitled to judgment as a matter of law, 6 Moore's Federal Practice, § 56.15(3), p. 2335 (2d Ed.); 3 Barron and Holtzoff, Federal Practice and Procedure, § 1235, p. 138 (Rules Ed.). This is so regardless of which party would have the burden of proof at the trial, Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187, 189. If, however, the movant has adequately supported the motion to the point of demonstrating that the issue tendered by the opposing party is frivolous or a sham, Brunswick Corporation v. Vineberg, 5 Cir., 370 F.2d 605, 612, then "a burden," Western Standard Uranium Company v. Thurston, Wyo., 355 P.2d 377, 384, is cast upon the opposing party to come forward as required by Rule 56(e), W.R.C.P.

For purposes here, however, we need not subject the affidavits of the experts as above summarized and of either party to microscopic examination for specific facts, if any, in order to determine which party did or did not meet its burden. If the affidavit of plaintiff's expert Donley was insufficient in that respect then the affidavits of the city were likewise deficient and the court erred in granting defendants' motion for summary judgment.

The problem, however, goes deeper than that. We have heretofore pointed out that the suitability of the existing con-

crete pavement as a base for the repaving was technical and the trial court was not in position to dispose of it without the aid. of those persons skilled in such matter. While we do not mean to say that summary judgment is never appropriate in such circumstances [1], it is well established that such is usually not the case, Sartor v. Arkansas Natural Gas Corporation, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, rehearing denied 322 U.S. 767, 64 S.Ct. 941, 88 L.Ed. 1593; Vacheron & Constantin-Le Coultre Watches v. Benrus Watch Company, 2 Cir., 260 F.2d 637; Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881; United States v. One Carton Positive Motion Picture Film Entitled "491," S.D.N.Y., 248 F.Supp. 373. To a large extent the rationale underlying the rule is based on the principle often pronounced by this court that the weight and probative value of expert opinion is a matter for determination by the trier of the facts—see for example State Highway Commission v. Newton, Wyo., 395 P.2d 606, 609—and we have further said that the court must "necessarily evaluate the testimony and decide which of the diverse views to accept," Shoni Uranium Corporation v. Federal-Radorock Gas Hills Partners, Wyo., 407 P.2d 710, 713. In Dulansky v. Iowa-Illinois Gas & Electric Co., supra, 191 F.2d at 884, the court after pointing out that such opinions were not of conclusive force said this:

> " * * * Whatever the weight of the testimony of these witnesses might be on trial a party may not, we think, by resorting to motion for summary judgment supported by affidavits, withdraw his witnesses from cross-examination, the best known method for testing the truthfulness of testimony. Their credibility and the weight to be given to their opinion should be determined on trial in the regular manner. * * * "

In fine, keeping in mind that this is an appeal from a summary judgment granted on defendants' motion, it is the function of this court to determine whether or not the defendants in support of their motion demonstrated beyond doubt that the issue concerning the concrete base was a sham and a frivolous issue upon which they were entitled to judgment as a matter of law. For the reasons heretofore stated, we must hold they did not and that upon the record submitted to the trial court it could not make such a ruling and must now take testimony on that issue.

We next turn to plaintiff's contention that the ordinance was violative of the equal protection provisions of Art. 1, § 2 of the Wyoming Constitution and the Fourteenth Amendment to the Constitution of the United States in that the property abutting First Street on the west between University Avenue and Custer Street alleged to have been owned by the Union Pacific Railroad was excluded from the district and assessment for benefits would not be made against it.

The ordinance, as authorized by § 15.1–348, W.S.1957, C. 1965, provided for the apportionment of the assessment of benefits on a lineal foot basis or an area basis, depending upon the nature of the improvement, and we are uncertain as to whether plaintiff is attacking the constitutionality of the statute or is claiming that the city council in the exercise of those powers discriminated against owners of property within the district. In view of our past pronouncements that the statute could not be said to be so arbitrary and discriminatory as to render it unconstitutional in that respect, at least as the statute existed prior to the 1963 amendment (ch. 145, § 12, S.L. of Wyoming, 1963), which is not here stressed, we shall assume that plaintiff's attack is grounded upon the claim of arbitrary action by the city council.

In this connection the record discloses that on the date fixed by the resolution for

---

1. In Western Standard Uranium Company v. Thurston, supra, we held summary judgment was proper there because the showing made by movant was sufficient and was uncontroverted. See also Kern v. Tri-State Insurance Company, 8 Cir., 386 F.2d 754.

the purpose of hearing and considering remonstrances and objections to the proposed district, plaintiff filed her written objections and in addition orally requested an explanation of why the property belonging to the Union Pacific Railroad fronting on First Street which was to be improved had been excluded from the district. She was informed that the city council had determined that such property would not be benefited by the improvements and should not therefore be included in the district. Just why the city council proceeded in that fashion rather than to have included the area in the district and thereafter to have omitted it from the assessment roll for the reasons stated, as was done in Bass v. City of Casper, 28 Wyo. 387, 205 P. 1008, rehearing denied 208 P. 439, is not explained and is somewhat difficult to understand. It would seem to have been more orderly to have followed the course pursued in Bass, but even so we think at most it was an irregularity which under the rationale of Bass, 205 P. at 1016, would not invalidate the ordinance. As there pointed out, plaintiff of course was entitled to "have her day in court" on the question and as a means toward that end § 15.1–349 requires that the city council, after the assessment roll is made up, sit as a board of equalization to hear objections and for good cause shown to "correct, revise, raise, lower, change or modify the roll or any part thereof." In fact, the ordinance contained a provision to that effect ·which reads:

"It is proposed to adjust any assessment on any property abutting upon, adjacent, vicinal or proximate to a street or alley, which is not improved so that the method of assessment will result in an equitable distribution of cost among the property owners in proportion to the benefits conferred by the improvements."

If, as plaintiff claims, the method of assessment of benefits adopted by the city council was shown to be discriminatory and prejudicial because of the claimed omission, we would assume that the board in keeping

with its authority would correct the matter or, if it refused, an appeal as provided by statute could be taken to the courts. In the light of such circumstances we hold that plaintiff's attack was premature and the court did not err in denying the relief sought by plaintiff on that score.

The last point to be considered is the claim of plaintiff that the city council exceeded its powers in including as an improvement in the district, and for which the property owners therein would be assessed on an area basis, the cost of removing, resetting or furnishing and installing new street lights, traffic signals and fire alarm improvements. Although the point is little developed by plaintiff in her brief and argument and is entirely ignored by the defendants, we think it appropriate inasmuch as the case is being sent back for further proceedings to express our views concerning the question.

 The only possible authority coming to our attention upon which defendants could rely for including the improvements described is the statutory definition of the word "improvement" contained in § 1, ch. 105, S.L. of Wyoming, 1967 (§ 15.1–330(d), W.S.1957, C. 1965, 1969 Cum.Supp.), and § 15.1–348(5), W.S.1957, C. 1965, of the general statutes pertaining to local improvement districts, which read as follows:

"(d) 'Improvement' means any local improvement of any kind, including, without limitation to sidewalks separate from or combined with curbs and gutters, and water distribution main lines and appurtenances thereto, the cost of which may be assessed upon the property benefitted [benefited]."

"(5) More than one improvement may be combined in a single local improvement district when the governing body determines that such a combination is both efficient and economical. If the combination of improvements are separate and distinct by reason of substantial difference in their character or location, or otherwise, the estimated costs of each improvement shall be segregated for the

levy of assessments and an equitable share of the incidental costs allocated to each improvement. In the absence of arbitrary or unreasonable abuse of discretion, its determination of the portion of the project constituting a separate improvement for purposes of segregation is conclusive."

In this connection we have pointed out that the authority of the city council to require the property specially benefited to bear the cost of local improvements "is a branch of the taxing power, or included within it," McGarvey v. Swan, 17 Wyo. 120, 96 P. 697, 707, and we have further recognized the "principle that a tax measure will not be effected by any means other than a clear, definite, and unambiguous statement of the legislative authority," Luman v. Resor, Wyo., 406 P.2d 527, 529.

 Assuming, without deciding, that the language "any local improvement of any kind" could be construed to embrace the special provisions of § 15.1–399, W.S. 1957, C. 1965, relating to street lights in the "business portion" of the city, which to say the least is a broad assumption, the record shows that the city failed in either the resolution or the ordinance to segregate the "estimated costs" of this "distinct" improvement as required by subsection 5, supra. It is fundamental, of course, that there must be substantial compliance with the statutes to warrant imposition of the costs of the improvement upon the property owners affected, Bass v. City of Casper, supra,

205 P. at 1011. With respect to the proposal to assess the costs for "traffic signals" and "fire alarm" improvements, no authority is pointed out and we have found none that would grant the power to the city council to include such facilities in a local improvement district. Consequently we hold that Section 4(G) of the ordinance and other specific references to such improvements contained in the general provisions of the ordinance are invalid and cannot be enforced.

 That is not to say, however, that such circumstance necessarily invalidates the entire ordinance. It contains a separability clause. General principles which are ordinarily applicable to statutes containing such a clause are likewise applicable to municipal ordinances, 37 Am.Jur., Municipal Corporations, § 167, p. 795, and connote an intention on the part of the city council to enforce the remaining valid portions of the ordinance if that is at all possible, State ex rel. Wyckoff v. Ross, 31 Wyo. 500, 228 P. 636, 639. The rule is particularly applicable here. The invalid portion is of somewhat minor importance, can readily be severed without affecting the valid provisions, and can be remedied at the time the assessment roll is made up.

In view of what has been said, we reverse the grant of summary judgment to the defendants and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.